**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| COSTARICA.COM, INC. SOCIEDAD ANONIMA, a foreign corporation; and ALEJANDRO SOLORZANO-PICADO, an individual;<br><br>    Plaintiffs,<br><br>  v.<br><br>\<costarica.com\>, a domain name;<br><br>    Defendant. | Case No.: |

## COMPLAINT FOR IN REM RELIEF

Plaintiffs CostaRica.com, Inc. Sociedad Anonima ("CostaRica.com") and Alejando Solorzano-Picado bring this complaint against the registrant of the *res* domain name \<costarica.com\> and alleges as follows:

## NATURE OF THE ACTION

1. This an *in rem* action under the Anticybersquatting Consumer Protection Act (ACPA), 15 U.S.C. § 1125(d), for injunctive relief and other relief in relation to the bad faith registration and use of the domain name \<costarica.com\> (the "Disputed Domain"), which infringes upon Plaintiff's distinctive COSTARICA.COM™ common law trademark.

2. Additional *in rem* claims are also brought, which include quiet title and conversion.

## THE PARTIES

3.  Plaintiff CostaRica.com is a foreign entity organized under the laws of Costa Rica and doing business within the United States.  A certification of the Costa Rican government affirming CostaRica.com to be duly incorporated and in good-standing is attached hereto as **Exhibit A**.

4.  Co-Plaintiff Alejandro Solorzano-Picado is an officer of CostaRica.com, residing in Costa Rica.

5.  *Res*-Defendant <costarica.com> is an Internet domain name which, according to records in the WHOIS database of domain name registrations, is currently registered by Amal Zakero ("Registrant"), in Egypt, as evidenced by **Exhibit B** attached hereto.

6.  On information and belief, the registrar for the Disputed Domain is Name.com, with its principal place of business in Denver, Colorado.

7.  On information and belief, the registry for the .com gTLD <costarica.com> is VeriSign, Inc. D/B/A Public Interest Registry, with its principal place of business in Alexandria, Virginia.

## JURISDICTION AND VENUE

8.  This action arises, *inter alia,* under Section 2201 of the Judicial Code, 28 U.S.C. § 2201, and Sections 32 and 43 of the Lanham Act, 15 U.S.C. §§ 1114 and 1125.

9.  This Court has subject matter jurisdiction over this action pursuant to Section 39(a) of the Lanham Act, 15 U.S.C. § 1121(a), and Sections 1131 (federal question jurisdiction) and 1338(a) (trademark infringement) of the Judicial Code, 28 U.S.C. § 1331 and 1338(a).

10. Venue is proper in this District pursuant to 28 U.S.C. § 1139(b)(2) and 15 U.S.C. §1125(d)(2)(C) because the cause of action arises in this District and the *res* (i.e. the Disputed Domain) that is subject to this action, is maintained by a registry, Public Interest

Registry, within the boundaries of this District, and which has its *situs* within this District.

11. This Court has *in rem* jurisdiction over the Disputed Domain pursuant to 15 U.S.C. § 1125(d)(2), 28 U.S.C. § 1655 and interpretive case law. Plaintiff is informed and believes, and therefore alleges, that this Court lacks *in personam* jurisdiction over the Registrant of the Disputed Domain, who would have been the defendant in a civil action pursuant to 15 U.S.C. § 1125(d)(l). On information and belief, Registrant is an individual who resides in the country of the Egypt and does not have the requisite contacts for this Court to establish *in personam* jurisdiction over the Registrant.

12. The Disputed Domain was stolen from Plaintiffs and registered to Registrant, in violation of Plaintiffs' rights at common law, statute, and in its COSTARICA.COM™ and COSTA RICA™ trademarks (the "Marks"), which are protected under 15 U.S.C. §§ 1125(a).

## FACTUAL BACKGROUND

13. Plaintiffs have been the owners of the Disputed Domain <costarica.com> since it was originally created in 1995, when the Internet was in its infancy, as manifest by the WhoIs history report attached hereto as **Exhibit C** which chronicles the history of the ownership of the Disputed Domain.

14. Since registering the Disputed Domain, Plaintiffs have continuously resolved the Disputed Domain to a website providing information about travel and tourist destinations in Costa Rica via a global communication network using the mark COSTARICA.COM™ (and COSTA RICA), current screenshots of which are attached hereto as **Annex D**.

15. Over the course of two decades, through Plaintiffs' continued use and promotion, the Marks have become distinctive throughout the United States and the world in connection

with Plaintiffs' services. Internet users and tourists have come to distinguish and recognize the legitimacy of Plaintiffs' services as a result of this use and promotion; and, as so, Plaintiffs' mark is entitled to common law trademark rights.

16. Plaintiffs registered the Disputed Domain for use a trademark in connection with travel and tourist-related services. In 1995, Plaintiffs' began using the Disputed Domain and the COSTA RICA™ and COSTARICA.COM™ trademarks, to market travel-related services. Archived screenshots from Internet Archive evidence the continuous uninterrupted use by the Complainant of the Disputed Domain for more than twenty years. These screenshots show the Complainant's use of the common law Marks throughout the life of the Disputed Domain. Attached as **Exhibit E** hereto are screenshots of the website to which Plaintiffs resolved the Disputed Domain in 1995. Attached as **Exhibit F** hereto are screenshots of the website to which Plaintiffs resolved the Disputed Domain in 1997. Attached as **Exhibit G** hereto are screenshots of the website to which Plaintiffs resolved the Disputed Domain in 2008. Attached as **Exhibit H** hereto are screenshots of the website to which Plaintiffs resolved the Disputed Domain in 2010. Attached as **Exhibit I** hereto are screenshots of the website to which Plaintiffs resolved the Disputed Domain in 2012.

17. All of these screenshots bear witness to the notoriety and secondary meaning Plaintiffs have developed in the Marks since the Internet was created.

18. Plaintiffs have spent tens of thousands dollars on graphic design, programming, and marketing, including banner advertising, search engine optimization, and other performance improvement.

19. Plaintiffs' website became very popular among Internet users and tourists to Costa Rica. These users have come to associate the Plaintiffs with the Marks.

20. In 2015 or early 2016, a hacker using a stolen username and password successfully "hacked" the MelbourneIT registration account of the Plaintiffs and transferred the Disputed Domain to its current registrar at Name.com.

21. Upon information and belief, this hacker accessed Plaintiffs' registration account, changed the administrative settings to forward Plaintiffs' emails and mail to addresses not controlled by the Plaintiffs, and initiated a transfer of the Disputed Domain. This hacker apparently changed the mailing address to an address in Menlo Park in California where he could receive mail then subsequently put a privacy service on the registration of the Disputed Domain to hide the fact the hacker had converted it.

22. Notably, the hacker did not redirect the nameservers. As a result, Plaintiffs' website stayed active after the theft. Because Plaintiffs' website was still active, Plaintiffs did not realize until mid-2016 that the Disputed Domain had been fraudulently transferred and converted. Plaintiffs surmise the hacker intended to wait until the expiration of the statute of limitations for conversion and other applicable claims to change the nameservers.

23. Upon learning of the theft, Plaintiffs promptly contacted Name.com to report the fraudulent transfer. Name.com informed Plaintiffs that it could do nothing and recommended that the Plaintiffs seek redress from a legal authority on the matter.

24. Plaintiffs has been unable to reverse the transfer. The Registrar refuses to help the Plaintiff. Plaintiffs now stands to lose overnight all control of the Disputed Domain along with the Plaintiffs only source of income and entire investment in the Disputed

Domain and website, which is worth hundreds of thousands of dollars (or even millions) at a minimum.

***Registrant's Bad Faith Registration and Use of the Disputed Domain***

25. The Disputed Domain incorporates the entirety of Plaintiffs' Mark.   Confusingly similarity is self evident.

26. Upon information and belief, the Disputed Domain was registered only for the purpose of obtaining Internet traffic from visitors who intended to visit Plaintiffs by searching for Plaintiffs' Marks in search engines and/or for the purpose of selling the Disputed Domain after expiration of a predetermined period of time.

27. The registration of the Disputed Domain mark is without authorization from Plaintiffs and consequently in bad faith.

28. Upon information and belief, the Disputed Domain does not and cannot reflect the legal name of the Registrant.   Upon information and belief, the Registrant of the Disputed Domain has not engaged in bona fide noncommercial use or fair use of the <costarica.com> domain name.

29. Upon information and belief, the Registrant of the <costarica.com> domain name was aware of Plaintiffs' Marks prior to its acquisition of the Disputed Domain, and it was this awareness which motivated the hacker/Registrant to convert the Disputed Domain.

30. Upon information and belief, Registrant registered the Disputed Domain with the intent to divert Internet visitors away from Plaintiffs, for commercial gain.

***Registrant's Knowledge of Plaintiff Is Evidence of Bad Faith***

31. The Registrant of the Disputed Domain acquired it in 2015 or 2016.   Upon information and belief, Registrant was aware of the Plaintiffs' Marks and the significant reputation of

Plaintiffs prior to the registration of the Disputed Domain.  This is, in fact, the very reason Registrant acquired the Disputed Domain.

32. Registrant's knowledge of Plaintiffs' Marks, and its use of the Marks, is evidence of Registrant's bad faith in selecting, acquiring, registering, and using the Disputed Domain.

33. Registrant's actions are likely to cause confusion, mistake, or deception as to the affiliation, connection, or association of Registrant with Plaintiffs, or as to the origins, sponsorship, or approval of Registrant's Disputed Domain by Plaintiffs, thereby causing loss, damage, and injury to Plaintiffs. The extent of potential confusion among Internet visitors between Registrant's Disputed Domain and Plaintiffs' Marks is substantial.

34. Registrant's use of the Disputed Domain does, and will likely continue to, falsely suggest a relationship between Registrant's Disputed Domain and Plaintiffs' services. Such use is likely to cause a significant increase in the level of Registrant's web traffic due to Internet visitors' mistaken belief that Plaintiff is the source or sponsor of Registrant's Disputed Domain.

35. Registrant's use of the Disputed Domain is therefore likely to result in Registrant's trading off and benefiting from the goodwill associated with Plaintiffs, resulting in ill-gotten gains by Registrant.

## FIRST CLAIM FOR RELIEF
### Anticybersquatting Consumer Protection Act (ACPA)

36. Plaintiffs incorporate herein by reference each and every allegation in the preceding paragraphs of this complaint.

37. Plaintiffs are the owner of the distinctive and famous Marks COSTARICA.COM™ and COSTA RICA™.

38. The Marks are distinctive of Plaintiffs' services, for which it continuously has been used and registered, and were distinctive since at least as early as 1995 when the Disputed Domain was registered.

39. Registrant has no rights in Plaintiffs' Marks nor the Disputed Domain.

40. Registrant's Disputed Domain is confusingly similar to Plaintiffs' Marks.

41. Registrant has registered, trafficked in, used, and is using the Disputed Domain with the bad faith intent to profit from Plaintiffs' mark.

42. Registrant's actions constitute a violation of Lanham Act § 43(d), 15 U.S.C. § 1125(d).

43. Plaintiffs have been, are now, and will continue to be, irreparably harmed by Registrant's aforementioned acts, and, unless enjoined by the Court. Registrant's unauthorized use of the Disputed Domain will continue, and there is no adequate remedy at law for the harm caused by Registrant's acts.

44. Upon information and belief, this Court lacks *in personam* jurisdiction over the Registrant, who would otherwise be the defendant in an action under 15 U.S.C. § 1125(d).

45. Because Plaintiffs own the exclusive rights to the Marks, and Registrant has no rights to them whatsoever, it is appropriate for this Court to declare that Plaintiffs are the rightful owner of the Disputed Domain and order the prompt transfer of the Disputed Domain to Plaintiffs.

<u>SECOND CLAIM FOR RELIEF</u>
**Quiet Title**

46. Plaintiffs incorporate herein by reference each and every allegation in the preceding paragraphs of this complaint.

47. Plaintiffs have valid legal and equitable title to the Disputed Domain.

48. Plaintiffs' title to the Disputed Domain is superior to any claim of title by Registrant.

49. Through their control of the Disputed Domain, Registrant has asserted a claim that constitutes a cloud on Plaintiffs' title.

50. Plaintiffs' good title to the Disputed Domain should not be subjected to various future claims against their title.

## THIRD CLAIM FOR RELIEF
### Conversion

51. Plaintiffs incorporate herein by reference each and every allegation in the preceding paragraphs of this complaint.

52. Plaintiffs have property rights in and are the owner of the Disputed Domain.

53. Registrant has taken control of the Disputed Domain and is wrongfully exercising control and authority over the Disputed Domain.

54. The control and authority exercised by Registrant deprives Plaintiffs of control and the income and business generated from the Disputed Domain.

55. Registrant is wrongfully exerting domino over Plaintiffs' property in denial of Plaintiffs' rights.


## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays that this Court:

(a)     declare, adjudge, and decree that Plaintiff is the sole legal and equitable owner of the Disputed Domain;

(b)     direct that the Disputed Domain be transferred and registered to Plaintiff; and

(c)     award such other and further relief that this Court may deem just and equitable.


DATED this the 23rd day of November, 2016.

/s/

_____

Steven Rinehart (VSB No. 81,738)
*Counsel for Plaintiffs*
110 S. Regent Street, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 456-9728
Fax: (801) 665-1292
Mobile: (801) 347-5173
Email: steve@utahpatentattorneys.com

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| COSTARICA.COM, INC. SOCIEDAD ANONIMA, a foreign corporation; and ALEJANDRO SOLORZANO-PICADO, an individual; <br><br> Plaintiffs, <br> v. <br><br> <costarica.com>, a domain name; <br><br> Defendant. | ) <br> ) <br> ) Case No.: <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## <u>VERIFICATION AND DECLARATION OF ALEJANDRO SOLORZANO-PICADO IN SUPPORT OF COMPLAINT</u>

I, Alejandro Solorzano-Picado, having personal knowledge of the matters set forth herein and being competent to testify about them if called to do so at trial, state as follows:

1. I declare that I am an officer of CostaRica.com, Inc. Sociedad Anonima ("CostaRica.com") and a co-Plaintiff in this matter.

2. I have read the foregoing VERIFIED COMPLAINT and know the contents therof.

3. The allegations are true and correct and are based upon my own personal knowledge and existing corporate documents, except for those matters stated upon information and belief. As to matters stated upon information and belief, I believe them to be true.

4. On November 23, 2016 at approximately 4:00 pm in Eastern Standard Time (EST), I personally observed the WHOIS records for the domain name <costarica.com> (the "Disputed Domain") attached to the Complaint, as well as personally observing screenshots of the website to which the Disputed Domain resolved formerly at <internetarchive.org> which archives screenshots of domain names for public access.

5.  Immediately after observing the contents of the WHOIS history, I printed them in PDF format and annexed them to the Complaint, saving them in computer-readable storage. The content of the webpages remains substantially identical to how it appeared on the Internet as of today.

   I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge.

   EXECUTED this the 23rd day of November, 2016.

   _____
   Alejando Solorzano-Picado
   *Manager of CostaRica.com*